**Camilia CZUBAJ, Plaintiff–Appellant,**

v.

**BALL STATE UNIVERSITY,
Defendant–Appellee.**

No. 04–1001.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 4, 2004.

Decided Aug. 13, 2004.

Allen Grotke, Gregory E. Bekes, Grotke & Bekes, Greenwood, IN, for Plaintiff–Appellant.

Scott E. Shockley, Defur, Voran, Hanley, Radcliff & Reed, Muncie, IN, for Defendant–Appellee.

Before FLAUM, Chief Judge, BAUER, and SYKES, Circuit Judges.

ORDER

Camilia Czubaj sued Ball State University ("University"), alleging that it terminated her doctoral assistantship because of her gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17. The district court granted summary judgment to the University, holding that Czubaj had not established a prima facie case of gender discrimination because she did not introduce evidence that she was meeting the University's legitimate performance expectations or that similarly situated male doctoral assistants were treated more favorably. We affirm the judgment of the district court.

The University admitted Czubaj to its Educational Leadership doctoral program for the 2000–2001 school year and offered her a doctoral assistantship. Czubaj accepted the assistantship, agreeing that in exchange for a salary of $8200 and tuition remission, she would register for the re-

quired minimum number of credit hours, work 20 hours a week for department professors, and maintain a cumulative GPA of at least 3.2. But after her first semester of classes, Czubaj failed to earn the required 3.2 GPA. The University placed her on academic probation, warning her that if she failed to raise her GPA by the end of her second semester, she would be dismissed from the doctoral program. When Czubaj failed to raise her GPA, the University terminated her assistantship and dismissed her from the program. After unsuccessfully challenging her grades and reapplying to the program, she filed a discrimination charge with the EEOC and, upon receiving her right to sue letter, sued the University for gender discrimination.

The University moved for summary judgment, arguing that Czubaj could not establish a prima facie case of gender discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the University argued that Czubaj was not meeting its legitimate performance expectations by failing to maintain a cumulative GPA of 3.2. Czubaj had admitted in her deposition that she had not achieved the minimum GPA requirement. Second, the University argued that Czubaj could not demonstrate that it had treated similarly situated male doctoral assistants more favorably than it had treated her. Czubaj admitted in her deposition that (1) she did not know how many hours the other doctoral assistants worked; (2) she could only "guess" that her co-workers worked less than twenty hours a week; and (3) she knew of no one allowed to stay in the Educational Leadership program with a cumulative GPA of less than 3.2.

In her opposition to the motion, Czubaj argued that she had in fact established a prima facie case of gender discrimination, citing only her own affidavit as evidence.

Regarding the University's minimum GPA requirement, she argued that the University's performance expectation was not legitimate because the University required her to work more than 20 hours a week, making her "unable to devote sufficient time to her classes remitting [sic] in lower grades." Further, she contended, the University failed to follow its "grading methodology," and if it had, she would have maintained the required GPA. Czubaj also argued that the University allowed Timothy Jahr, a male graduate student, to work less than his required 20 hours per week.

The district court granted the University's motion for summary judgment. First, the court held that Czubaj was not meeting the University's legitimate expectation of maintaining a 3.2 GPA. Addressing Czubaj's claim that the professors did not follow their grading procedures, the court declined to substitute its judgment for the University's that Czubaj's grades were appropriate. Second, the district court found that Jahr was not similarly situated because he was enrolled in the master's degree program, not the doctoral program. And, even if Czubaj was similarly situated to Jahr, or any other male graduate classmates, she had not demonstrated that she was treated less favorably than them because her only evidence that these individuals worked fewer hours was her own "guess."

This court reviews the grant of summary judgment *de novo* and views the evidence in the light most favorable to Czubaj. *See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 974 (7th Cir. 2004). Czubaj does not claim to have direct evidence of intentional discrimination, and therefore, must proceed under the *McDonnell Douglas* indirect method. Thus, to establish a prima facie case of gender discrimination, Czubaj was required to produce evidence that (1) she

was a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than at least one similarly situated employee outside her protected class. *Id.* at 978. The University concedes that Czubaj is a member of a protected class and that she suffered an adverse employment action when it terminated her assistantship.

Czubaj and the University dispute only whether she met the University's legitimate job expectations and whether the University treated similarly situated males more favorably than it treated her. Czubaj admitted that she did not meet the University's minimum GPA requirement.[1] During her deposition, she acknowledged that the University required her to maintain a 3.2 GPA but that she failed to do so. But Czubaj contends that the University prevented her from earning a 3.2 GPA by demanding that she work more than the stated 20 hours a week.

This court will not second-guess the University's expectations about the workload required of a doctoral candidate. *See Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir.1997) (explaining that "legitimate expectations" simply are "bona fide expectations, for it is no business of a court in a discrimination case to decide whether an employer demands 'too much' of his workers"). However, the legitimacy of those expectations would be undermined by evidence that the University applied the expectations in a discriminatory manner— for instance, if it treated similarly situated male graduate assistants more favorably by letting them work less than 20 hours a week. When a plaintiff produces evidence

sufficient to raise an inference that the employer applied its legitimate expectations in a disparate manner, the legitimate expectation and similarly situated prongs of the *McDonnell Douglas* indirect method of proof merge, allowing the plaintiff to establish a prima facie case of discrimination by establishing that similarly situated employees were treated more favorably. *See Grayson v. O'Neill*, 308 F.3d 808, 818 (7th Cir.2002); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir.2002). Consequently, unless Czubaj can show that similarly situated male employees were treated more favorably, she cannot establish a prima facie case of gender discrimination.

Czubaj argues that the University treated male graduate assistants more favorably by permitting them to work less than the stated 20 hours a week, but she offers no evidentiary support for this claim. The only evidence she offered on this issue was her own affidavit in which she stated merely, "Males were allowed to work less than 20 hours per week." But in her earlier deposition, Czubaj had admitted that her statement that male graduate assistants worked fewer than 20 hours was a guess. Czubaj's assertion in her summary judgment affidavit cannot create a disputed fact because it contradicts her deposition testimony. *Beckel v. Wal–Mart Assoc., Inc.*, 301 F.3d 621, 623 (7th Cir.2002). Moreover, statements in affidavits must be based upon personal knowledge, *see Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 736 (7th Cir.2001), and her affidavit statement was nothing more than an unsupported guess. Thus, Czubaj failed to demonstrate a genuine issue of material fact sufficient

---

1. Although Czubaj attempts now to argue that the University's minimum GPA was actually 3.0, based upon a letter from the University dated May 8, 2001, she never raised this argument below, and therefore, she has waived it. *Bell v. Duperrault*, 367 F.3d 703, 709 n. 1 (7th Cir.2004).

to preclude the entry of summary judgment for the University.

AFFIRMED.