NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 1, 2022
Decided March 16, 2022

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-2773

| | |
|---|---|
| IRINA MARON, *et al.*,<br>    *Plaintiffs-Appellants*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:20-cv-07282 |
| AMERICAN ENTERPRISE BANK, *et al.*,<br>    *Defendants-Appellees*. | Andrea R. Wood,<br>*Judge*. |

**ORDER**

Bishop Partnership, LLC, defaulted on a loan from American Enterprise Bank, leading the bank to sue Bishop in Florida state court to foreclose on Bishop's collateral. Bishop's partners responded in that suit with counterclaims in 2012, alleging that the bank extended the loans in violation of Florida's anti-racketeering law. Eight years later, those partners brought what they admit is the same claim in federal court, this time invoking the federal anti-racketeering law. The district court concluded that the new suit is time-barred by the federal law's four-year statute of limitations, and it dismissed the suit as blocked by that defense. We agree and affirm the judgment.

## I.  BACKGROUND

We recount the allegations in the light most favorable to the plaintiffs, who are appealing their complaint's dismissal. *See United States v. Molina Healthcare of Ill., Inc.*, 10 F.4th 765, 770 (7th Cir. 2021). In 2006, Bishop received a loan of about $1.6 million from American Enterprise to buy and develop a Chicago property. Bishop pledged that property as collateral. Three years later, Bishop defaulted on the loan, and American Enterprise successfully foreclosed on the Chicago property and obtained a deficiency judgment against Bishop.

About two years after receiving the deficiency judgment, American Enterprise sued in Florida state court in 2011 in order to foreclose on two Florida condos that Bishop had also pledged as collateral for the loan. The condos were owned by Bishop's partners, but the partners challenged the condos' status as collateral, arguing that American Enterprise's executives had lied to secure the loan with the condos. In 2012, the partners counterclaimed in the Florida suit, alleging that this fraud violated Florida's anti-racketeering laws.

Eight years after filing their anti-racketeering counterclaims in Florida, and with that case still pending, the partners turned to federal court to sue American Enterprise under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. In what they admit is "a complete identity of the causes of action," between their Florida and federal-forum claims, they allege that American Enterprise and its agents defrauded plaintiffs with low-quality loans, received fees for originating the loans, then sold the loans or foreclosed on the collateral. They also seek to enjoin the Florida proceedings. The defendants moved to dismiss the claims for lack of standing and because the limitations period had lapsed. They contended that plaintiff Michael Fridman lacked standing because he no longer had an ownership interest in the Florida buildings. For the limitations defense, they argued, the claims accrued at the latest by 2012, when the partners counterclaimed in the Florida proceedings. Thus, the defendants concluded, the four-year statute of limitations for RICO claims, *see Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987), barred the claims in the plaintiffs' 2020 federal suit. The district court agreed that the claims were time-barred and granted the motion on that basis.

## II. ANALYSIS

*A. Standing*

Although the district court did not dismiss for lack of standing—and American Enterprise does not revive the argument on appeal—we turn first to this issue because it bears on federal jurisdiction. *See Lennon v. City of Carmel*, 865 F.3d 503, 506 (7th Cir. 2017). American Enterprise asserted that by the time it tried to foreclose on the Florida buildings, Fridman no longer had an interest in those properties and thus could not have suffered an injury necessary for standing. But the district court observed that American Enterprise named Fridman as a defendant in the Florida case, and he incurred attorneys' fees as a result. Although, the court noted, the question whether such fees create RICO standing is unsettled, *see Evans v. City of Chicago*, 434 F.3d 916, 931 (7th Cir. 2006), it ruled that Fridman had standing because his fee debt arose directly from American Enterprise's alleged foreclosure scheme.

We agree with the district court that it had jurisdiction to consider Fridman's claims. RICO requires a quantifiable injury to "business or property," *Evans*, 434 F.3d at 925, proximately caused by the alleged violation, *see Holmes v. Sec. Inv'r. Prot. Corp.*, 503 U.S. 258, 268 (1992). Since the district court issued its ruling, however, we clarified that this requirement is neither jurisdictional nor required for standing; rather, it is an element of a RICO claim. *Ryder v. Hyles*, No. 21-2590, 2022 WL 628410, at *1 (7th Cir. Mar. 4, 2022). Therefore, even if this requirement were unmet, federal jurisdiction would remain. In any case, Fridman's allegations satisfy this requirement: Because he would not have incurred any expense but for American Enterprise's allegedly wrongful foreclosure suit, his attorney-fee debt satisfies the requirement for an injury to business or property. Furthermore, it is undisputed that the other plaintiffs have suffered injuries to their property interests in the Florida condos.

*B. Statute of Limitations*

With federal jurisdiction secure, we address the defense of the statute of limitations. We review *de novo* a ruling that the statute of limitations requires dismissal of a complaint. *Vergara v. City of Chicago*, 939 F.3d 882, 886 (7th Cir. 2019). A dismissal

based on this defense is proper when the complaint sets forth everything necessary to satisfy the defense. *Id*.

Dismissal was correct here. A RICO claim accrues when the plaintiffs knew or should have known of their injury. *See Rotella v. Wood*, 528 U.S. 549, 555 (2000). This knowledge occurred by 2012, because that is when the plaintiffs filed their Florida counterclaims, which they admit share "complete identity" with their current federal claims. They also do not contest that RICO's statute of limitations is four years and that they filed this suit more than four years after 2012. Thus this suit is untimely; their arguments to the contrary are unconvincing.

First, the plaintiffs invoke RICO's criminal-conviction rule, 18 U.S.C. § 1964(c), to assert that the limitations period did not begin in 2012. In relevant part, § 1964(c) states that a plaintiff may not bring a RICO suit on "securities" fraud unless the defendant has been convicted of that fraud, in which case the limitation period begins when "the conviction becomes final." An agent of American Enterprise—who is *not* a defendant— was convicted of securities fraud in 2019. The plaintiffs thus conclude that their 2020 complaint is timely.

But this argument fails in two respects. First, American Enterprise rightly points out that the plaintiffs failed to raise this argument in district court and therefore waived it in this court. *See Johnson v. Dominguez*, 5 F.4th 818, 826 (7th Cir. 2021). Waiver aside, because the plaintiffs have not sued the one person at American Enterprise convicted of securities fraud, § 1964(c) actually *blocks* the plaintiffs from suing the others under RICO for securities fraud unless and until they have been convicted of it. 18 U.S.C. § 1964(c). True, the plaintiffs are suing the defendants under RICO based on allegations of fraud other than securities. But as just explained, those claims accrued by 2012, when the plaintiffs filed in Florida the fraud counterclaims that they admit bear "complete identity" with their current suit.

Next, the plaintiffs rely on equitable tolling and estoppel, but they do not assert facts under which either doctrine could extend the limitations period. Equitable tolling stops the limitations clock when, even though a plaintiff pursued rights diligently, an "extraordinary circumstance" prevents a timely suit. *Herrera v. Cleveland*, 8 F.4th 493, 499 (7th Cir. 2021). The plaintiffs argue that their filing of their Florida counterclaims reflects their diligence and supplies a good-faith reason that they did not file RICO claims earlier. But assertions of diligence and good faith are not enough to justify

equitable tolling; an extraordinary circumstance that blocks filing is required, and the plaintiffs do not assert one.

They similarly fail to assert the "fraudulent concealment" necessary for equitable estoppel. *See Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 676 (7th Cir. 2009) (listing "hiding evidence, destroying evidence, or falsely promising not to plead the statute of limitations" as actions that may justify equitable estoppel). The plaintiffs argue that American Enterprise "took active steps and made statements to prevent" them from bringing the claims on time. But the "steps" that they cite are insufficient. In their appellate brief, they cite American Enterprise's filings in the Florida court and settlement efforts there, arguing that these actions "lulled" them into inaction. But the plaintiffs do not identify what the defendants concealed that, if revealed, would have led to a timely RICO suit; nor could they, given that they knew enough in 2012 to file the same claims in Florida.

The plaintiffs also invoke a version of the "continuing-violations" doctrine to avoid the limitations defense. They argue that, after December 2016, the four-year period to sue was extended each time the defendants made a false statement in the Florida foreclosure proceedings; those ongoing falsehoods, they add, explain their request in this suit to enjoin that litigation. But the plaintiffs misunderstand how the doctrine works. It provides that a limitations period does not begin to run until the latest in a series of acts, when combined with prior acts, matures into a legal injury. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). But once a discrete legal wrong has accrued, as the plaintiffs admit occurred in 2012 when they counterclaimed in Florida, the limitations period begins to run. *See Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 800–01 (7th Cir. 2008) (explaining the continuing-violations doctrine). We recognize that the plaintiffs cite events that occurred since 2016. But they must assert that at least two of these events are predicates for a fresh pattern of racketeering under RICO, and they have not done so; moreover, even if they did, it would not allow them to recover for the injuries that they identify in their complaint, the pre-2012 alleged racketeering. *See id.*

Finally, the plaintiffs protest that the district court erred by not offering them an opportunity to amend their complaint. Although dismissing a suit without giving the plaintiffs one opportunity to amend a defective complaint is uncommon, *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018), it is not necessarily erroneous: District courts may dismiss an original complaint with prejudice where an amended complaint would be futile. *See Vitrano v. United States*, 721 F.3d 802,

809 (7th Cir. 2013). That rationale applies here. The district court correctly reasoned that the plaintiffs conceded that they knew about the alleged RICO violations by 2012, and they did not recant that concession or otherwise assert facts that, if true, would overcome that concession. *See Jauquet v. Green Bay Area Catholic Educ., Inc.*, 996 F.3d 802, 812 (7th Cir. 2021). That remains true on appeal.

AFFIRMED