**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**May 3, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

JOE C. ALLEN, JR.; CAROL ANAGAL;
CHERYL ARMENTA; DUANE
ASPAAS; LEONTYNE ATCITTY; LULA
ATCITTY; WILFORD ATSON; HILDA
BALDWIN; AARON BARBER; DAISY
BARBER; PAUL BARBER; ROGER
BARBER; ALICE BEGAY; ANDY
BEGAY; ARLENE BEGAY; BERNITA
BEGAY; BETTY BEGAY; CAROLINE
BEGAY; CHARLENE BEGAY;
CORLIVIA BEGAYE; ELIZABETH
BEGAY; ERIC BEGAY; HELEN
BEGAY; JACQUELINE L. BEGAY;
JACQUELINE S. BEGAY; JONAH
BEGAY; JUDY BEGAY; MAE BEGAY;
MARYLITA BEGAY; ROY BEGAY;
SANDRA BEGAY; VIRGINIA BEGAY;
WAYNE BEGAY; ETTA BEGAYE;
JENATHAN BEGAYE; RICHARD
BEGAYE; ROBERT BEKISE; DAVID
BEN; RECHELLEDA BENALLIE; DINA
BENALLY; ERNEST BENALLY;
HARRY BENALLY; JEANNIE
BENALLY; MAX BENALLY; NINA
BENALLY; PEARLENE BENALLY;
ROSE BENALLY; STEVE BENALLY;
SUSAN BENALLY; WANDA
BENALLY; LARENA BENN; LYNALLA
BENN; SHIRLEY BIA; PRISCILLA
BIGMAN; VERNIDA BISSONETTE;
LORRAINE BLACK; MABLE BLACK;
TAYLOR BLACK; TOM
BLACKHORSE; ANNIE BLUEEYES;
SCOTT BRADY; ANDREW
BREWSTER; DARLENE BRONSTON;
JANICE TERRI BROWN; JACKSON

No. 19-2197

BUNNY, JR.; ALBERT BYLILLY;
HARRISON CATTLEMAN, JR.;
SAMMY CHARLEY; WILMA
CHARLEY; DARRELL CLAH;
BENJAMIN CLARK; MARY CLARK;
TONI CLAW; LAHOMA CLY; STELLA
CLY; DORIS COOLIDGE; JIMMIE
COOLIDGE; WILBERT COWBOY, JR.;
ALFRED CURLEY; DON CURLEY, JR.;
MELVIN CURLEY; MARTHA CURTIS;
RACHEL DEE; DAVIDSON DEVORE;
LUCY DICK; MARLENE DOBEY;
ELTON DODGE; SUSIE DODGE;
TOMMY DRAPER; BESSIE DUNCAN;
CECIL DUNCAN; THURSTON EDDIE;
HERMAN ENOAH; MARY ENOAH;
VERNESE ESPLAIN; ALLEN E.
ETSITTY; BERTHA A. ETSITTY;
HURON ETSITTY; RENA FASTHORSE;
JANICE FRANK; SARAH FRANK;
GENE FRED; KEE DAN; LOREN
GARNANEZ; SHALINA GRANDSON;
JAMES GRANT; CRYSTAL GREY;
REYVETTE GREY; SHAWNA HAMM;
JULIE HARRISON; MARGARET
HARRISON; HUBERT HARWOOD;
EMERSON HATATHLEY; LORETTA
HATATHLEY; ANITA HAYES; PERRY
HAYES; ROBERT HAYES; ROBIN
HAYES; WALLACE HAYES; LOUISE
HENDERSON; ANNIE HENRY; ELSIE
HENRY; FREDDIE HOBSON; JOANNE
HOLLIDAY; TOM HORSE; DAISY
HOUSER; HELEN HOWARD; HERMAN
HUNT; IRITA JAMES; EDDIE JAY;
GARRY JAY; MARY JAY; CHARLEY
JIM; DANIEL JIM; DARRELL JIM;
FANNIE MARIE JIM; GENEVA JIM;
JONAH JIM; KYLE JIM; NORMAN JIM,
SR.; SHEILA JIM; VIRGINA JIM; ELSIE
JOE; LITA JOE; FRANK JOHN, JR.;
HERMAN JOHN; HARRISON
JOHNSON; JESSIE JOHNSON; ANNE

2

JOHNSON; JEAN JONES; LENA J. JONES; RAYMOND JONES; RENITA T. JONES; THERON JONES; WESLEY JONES; DARREN KEE; JUANITA KEE; MAX KELLYWOOD, SR.; FRANCINE KIEFERT; FLORENCE B. KING; MARLENA KING; TERRI LAMEMAN-AUSTIN; GLORIA LANE; HARRY LANE; ADA LANSING; JOHN LANSING; ALBERT H. LEE; EMERSON LEE; EVELYN M. LEE; LEONARD LEE, SR.; MARIE LEE; MICHELLE A. LEE; ROSELYN LEE; MICHAEL N. LITTLE; ROWENA LITTLEHAT; IRENE LIVINGSTON; CARMELITA LOWE; CYNTHIA MADISON; MARY ANN MANYGOAT; ESTHER MARK; MAE MARTIN; GERALD MARYBOY; JAMES MASON; BEVERLY MAXWELL; WALLACE MCGILBERT; ROSINA T. MERRITT; SHERRELL G. MESA; RON MILLER; EMMA MITCHELL; LAURA M. MITCHELL; LUCY B. MITCHELL; SYLVIA MITCHELL; MARLIYN MUSTACHE; ANTHONY NABAHE; BETTY JONES NAKAI; HARRY S. NAKAI; JIMMY NAKAI; BYRON NELSON; PAULINE D. NELSON; RUBY NELSON; TONITA NELSON; RUTH NEZ; ANNIE OLDMAN; RAYMOND OLDMAN; BESSIE S. PELT; HARRY PESHLAKAI, SR.; THOMAS PETE; RAYMOND PETTIGREW; CHARLES PHILLIPS; CHARLES D. PHILLIPS; DOROTHY PHILLIPS; MARY J. PHILLIPS; VERNON PHILLIPS; WILSON PHILLIPS; SHANDIE PIOCHE; SARAH POLICE; ESTHER REDDOOR; ELLA REDHOUSE; LUCY RENTZ; PHILLIP RENTZ; NELSON ROCKWELL; PERFINA ROCKWELL; RONNIE ROSS; LARRY B. SAM; BOBBY SANDOVAL;

3

LULA SANDOVAL; SUSIE SCOTT; RAYMOND G. SELLS; ROGER SHAGGY; ROGER SHERMAN; BESSIE SHORTHAIR; DAVID SHORTHAIR; WADE SHORTHAIR; CELESTE SILAS; ELLA SILAS; MARILYN SILAS; RUBY B. SILAS; CHRISTINA SILENTMAN; JAMES SIMPSON; ROGER L. SIMPSON; GEORGE L. SISCO, JR.; SARAH SLOWMAN; ERIC SMALLCANYON; TEDDY SMALLCANYON; ROSE ANN TANNER; BESSIE TESSWOOD; THE ESTATE OF LEON JONES; THE ESTATE OF ROSE MERRITT; THE ESTATE OF WAYNE SALTWATER; DORA TODACHEENE; JERRY TODACHEENE; LEWIS TODACHEENE; CHARLIE N. TODACHEENIE; HERBERT TODACHENNIE; IRENE TODACHENNIE; BERNADINE TODECHENE; VINCENT TODECHENE; DOROTHY TODECHINE; FLORA TODECHINE; ROSELYN TOLEDO; HELEN TOM; SARAH A. TONY BENALLY; MARY TSO; IVAN TYLER; THOMAS T. TYLER; PHYLLIS VALDEZ; ANNA VIGIL; CECILIA WALLACE; JOHNSON WASHBURN, JR.; JOHNSON WASHBURN, SR.; ROSELYN WATCHMAN; CLARENCE D. WESTON; CORNELIA WESTON; DELLA WESTON; HAROLD WILLIAMS; LENORA WILLIAMS; HERBERT WILLIE; LENA WILLIE; RAYMOND G. WILLIE; ESTHER A. YANITO; ALICE D. YAZZIE; CALVIN YAZZIE; EARL D. YAZZIE; IRVIN YAZZIE; JAY YAZZIE; LORENZO YAZZIE; MARIE YAZZIE; SUSIE YAZZIE; LAURENCE BEKISE; TIMOTHY BEN,

4

Plaintiffs - Appellees,

v.

ENVIRONMENTAL RESTORATION, LLC,

Defendant - Appellant,

and

GOLD KING MINES CORPORATION; KINROSS GOLD CORP.; KINROSS GOLD USA, INC.; UNITED STATES OF AMERICA; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; SUNNYSIDE GOLD CORPORATION; WESTON SOLUTIONS, INC.,

Defendants.

----------------------------------------

SUNNYSIDE GOLD CORPORATION,

Amicus - Curiae.

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. Nos. 1:18-CV-00744-WJ-KK &
1:18-MD-02824-WJ)**

_____

Rory S. Miller, Glaser Weil Fink Howard Avchen & Shapiro LLP (Terry D. Avchen and Peter C. Sheridan, with him on the brief), Los Angeles, California, for Defendant-Appellant Environmental Restoration, LLC.

Kate Ferlic, Egolf + Ferlic + Martinez + Harwood (Kristina Martinez and Mark Cox, with her on the brief), Santa Fe, New Mexico, for Plaintiffs-Appellees Joe C. Allen, et al.

_____

Before **McHUGH**, Circuit Judge, **LUCERO**, Senior Circuit Judge, and **CARSON**, Circuit Judge.

_____

**CARSON**, Circuit Judge.

_____

When Congress passed the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251–1389, it established an all-encompassing program of water pollution regulation. The CWA preserved certain state law actions, but it set forth a detailed regulatory system—so carefully prescribed that a court must apply the point source state's substantive law to these state law claims, no matter the forum. The Supreme Court made that much clear over a quarter century ago. But today we confront what statute of limitations controls such state law claims—the forum state, the point source state, or federal. Just as the forum state must apply the point source state's substantive law, today we hold it also must apply the point source state's statute of limitations. We exercise jurisdiction under 28 U.S.C. § 1292(b) and reverse.

I.

During excavation of an inactive gold mine in southwestern Colorado, a blowout caused the release of at least three million gallons of contaminated water into Cement Creek. The water from Cement Creek flows into the Animas and San Juan Rivers, which continue into New Mexico. The United States Environmental Protection Agency ("EPA") has conceded its responsibility for the spill and its impacts. The State of New Mexico, the Navajo Nation, and the State of Utah separately filed civil actions, under the CWA, in New Mexico and Utah against the

owners of the mine, the EPA, and the EPA's contractors. Defendant Environmental Restoration, LLC moved to transfer the Utah case to the District of New Mexico for coordinated or consolidated pretrial proceedings. The United States Judicial Panel on Multidistrict Litigation granted the motion and centralized proceedings in the District of New Mexico. Later, the Allen Plaintiffs—individuals who farm land or raise livestock along the Animas River or San Juan River—filed a complaint in the District of New Mexico that included state law claims of negligence, negligence per se, and gross negligence. The district court consolidated the Allen Plaintiffs' suit, including the state law claims, into the Multidistrict Litigation.

Defendant Environmental Restoration, LLC moved to dismiss the Allen Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Allen Plaintiffs did not file their complaint within Colorado's two-year statute of limitations and therefore they failed to state a claim. The Allen Plaintiffs responded that they timely filed under New Mexico's three-year statute of limitations. The district court denied the motion to dismiss, reasoning that New Mexico's three-year statute of limitations applied to the Allen Plaintiffs' state-law claims. The district court certified the issue for interlocutory appeal. We granted Defendant's Petition for Permission to Appeal.

II.

Despite the CWA's "pervasive regulation" and "the fact that the control of interstate pollution is primarily a matter of federal law," the CWA specifically preserves certain state actions. Int'l Paper Co. v. Ouellette, 479 U.S. 481, 492, 497

7

(1987); 33 U.S.C. § 1365(e) ("Nothing in this section shall restrict any right which any person . . . may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief").  International Paper made clear that point source state substantive law applies to such state actions.  Id. at 497.  But the Allen Plaintiffs contend that the Supreme Court's holding in International Paper does not extend to procedural law, such as the application of a statute of limitations.  On appeal, Defendant argues that Congress's intent in passing the CWA, along with relevant Supreme Court precedent, mandates that Colorado's two-year statute of limitations applies to the Allen Plaintiffs' state law claims.  The Allen Plaintiffs, however, contend that nothing in the CWA or the Supreme Court's precedent changes the general rule that the forum state's statute of the limitations applies.  Alternatively, the Allen Plaintiffs assert that if the CWA caused preemption of the forum state's statute of limitations, we should apply the federal, five-year "catch-all" statute of limitations in 28 U.S.C. § 2462.  We review whether a district court properly applied a statute of limitations de novo.  Brady v. UBS Fin. Servs., Inc., 538 F.3d 1319, 1323 (10th Cir. 2008) (citations omitted).  And we conclude that the district court did not here because both the CWA and the Supreme Court's interpretation of the CWA compel a district court to apply the point source state's statute of limitations to state law claims preserved under the CWA.

Generally, a "federal court hearing a diversity action applies the statute of limitations which would be applied by a court of the forum state, . . . even when the action is brought under the law of a different state."  Dow Chem. Corp. v. Weevil-

8

Cide Co., Inc., 897 F.2d 481, 483–84 (10th Cir. 1990) (internal citation omitted).

But Congress has the power to preempt state statutes of limitation. Cf. CTS Corp. v.

Waldburger, 573 U.S. 1, 4 (2014) (stating that the discovery rule in a federal statute

preempted a state statute of limitations in conflict with the federal statute's terms).

So here, we must determine whether the CWA modifies our general proposition.

Congress adopted comprehensive amendments to the CWA in 1972. See Int'l

Paper, 479 U.S. at 488. And Congress intended those amendments to "establish an

all-encompassing program of water pollution regulation." Milwaukee v. Illinois, 451

U.S. 304, 318 (1981). The CWA "makes it clear that affected States"—those that

share an interstate waterway with the point source states—"occupy a subordinate

position to source States in the federal regulatory program." Int'l Paper, 479 U.S. at

491. Congress did not intend to undermine their "carefully drawn statute through a

general saving clause." Id. at 494. Thus, "the preemptive scope of the CWA

necessarily includes *all* laws that are inconsistent with the 'full purposes and

objectives of Congress.'" Id. at 499 n.20 (quoting Hillsborough Cnty. v. Automated

Med. Lab'ys., 471 U.S. 707, 713 (1985)). The Supreme Court did not limit its

language.[1] "All" means all.

_____

[1] The Allen Plaintiffs contend that International Paper's holding applies only to "common law" and that statutes of limitations are set by statute—not common law. The Supreme Court's use of the phrase "common law" throughout International Paper makes sense in context. In International Paper, the Court addressed whether the CWA preempted a common law nuisance suit filed in an affected state, much like the Allen Plaintiffs' claim. 479 U.S. at 483. Besides common law claims, the savings clause also preserves certain statutory claims—none of which were at issue in International Paper. Given the posture of the case, we are unsurprised with the

Here, application of the forum state's statute of limitations is inconsistent with Congress's full purposes and objectives in passing the CWA—one being efficiency, predictability, and certainty in determining liability for discharging pollutants into an interstate body of water. Id. at 496–97. The Allen Plaintiffs seek to limit International Paper to a court's application of substantive law. True, in International Paper, the Supreme Court addressed an issue of substantive law. But the Court's analysis applies equally to the application of *all* law—including procedural—that is inconsistent with Congress's full purposes and objectives. See supra note 1. And applying a forum state's statute of limitations would do just that. Congress's goals in passing the CWA—uniformity, efficiency, certainty, and predictability—suggest that a single statute of limitations should govern all state law claims emanating from a single water-polluting event. See Cantrell v. Int'l Bhd. of Elec. Workers, Loc. 2021, 32 F.3d 465, 467 (10th Cir. 1994) (recognizing the need for uniformity in statutes of limitation for one claim); see also Owens v. Okure, 488 U.S. 235, 240 (1989) (noting predictability as a "primary goal" of statutes of limitation). Allowing different state statutes of limitation to apply "would only exacerbate the vagueness and resulting uncertainty" Congress sought to avoid. Int'l Paper, 479 U.S. at 496. Consistency and predictability in this context involve far more than just the substantive issue of differing standards of effluent control. A comprehensive regulatory scheme is no

---

Court's usage of the phrase "common law" throughout the opinion. But the Court did not limit or qualify its statement that *all* laws inconsistent with the full purposes and objectives of Congress to common law claims only. Id. at 499 n.20.

10

longer comprehensive when a defendant to an action cannot predict how long it may be subject to suit.

The Allen Plaintiffs argue that statutes of limitation are merely procedural devices that cannot create or impose any legal liability. That may be so, but statutes of limitation "serve the important purpose of encouraging the prompt filing of claims and by doing so of enhancing the likelihood of accurate determinations and removing debilitating uncertainty about legal liabilities." Vergara v. City of Chicago, 939 F.3d 882, 887 (7th Cir. 2019) (quoting Shanoff v. Ill. Dep't of Hum. Servs., 258 F.3d 696, 703 (7th Cir. 2001)). Without a uniform statute of limitations, a defendant is exposed to lawsuits potentially indefinitely, which "would frustrate the carefully prescribed CWA regulatory system." Int'l Paper, 479 U.S. at 499 n.20. Such an approach contradicts the CWA's policy of consistency and predictability.[2]

---

[2] The Allen Plaintiffs cite three cases from West Virginia they claim support their position that some courts have applied International Paper to preempt substantive law only. None accomplish that stated goal. The first case, Ashland Oil, Inc. v. Kaufman, 384 S.E.2d 173, 179–80 (W. Va. 1989), did not address the situation we address today. The Supreme Court of Appeals of West Virginia stated that whether the Clean Air Act regulated the emissions at issue in that case—thus preempting West Virginia's common law or statutes—was unknown at the time of the opinion. Id. It simply held that International Paper required applying the statutory or common law of the source state to an interstate pollution dispute when the Clean Air Act regulated the pollutants. Id. at 180. The court's statement that it would follow West Virginia's procedural law, id., is unremarkable when the court had not even determined whether the Clean Air Act applied or if the procedural law was inconsistent with Congress's full purposes and objectives. Next, the Allen Plaintiffs cited Arnoldt v. Ashland Oil, Inc., 412 S.E.2d 795 (W. Va. 1991), another Supreme Court of Appeals of West Virginia case. In that case, the court repeated its earlier holding that "the procedural law of West Virginia shall be followed when the issues [interstate pollution disputes] are being litigated in this State's courts." Id. at 800 (quoting Kaufman, 384 S.E.2d at 180). The court then said that because

11

Plaintiff's alternative argument, that we should apply the five-year federal "catch all" statute of limitation also fails. As a general proposition, a "federal court sitting in diversity applies state law for statute of limitations purposes." Burnham v. Humphrey Hosp. Reit Trust, Inc., 403 F.3d 709, 712 (10th Cir. 2005) (citing Guaranty Tr. Co.  v. York, 326 U.S. 99, 109–10 (1945)). And nothing changes that general rule here. The cases the Allen Plaintiffs rely on for support involved citizen suits brought pursuant to the CWA—in other words, suits brought under federal law. See Pub. Int. Rsch. Grp. v. Powell Duffryn Terminals Inc., 913 F.2d 64, 69 (3d Cir. 1990) (involving nonprofit corporation plaintiffs filing a citizen suit under § 505 of the CWA); Sierra Club v. Chevron U.S.A., Inc., 834 F.2d 1517, 1520–21 (9th Cir. 1987) (same); Atlantic States Legal Found. v. Al Tech Specialty Steel Corp., 635 F. Supp. 284, 286–87 (N.D.N.Y. 1986) (same). Those cases applied the federal "catch all" statute of limitations to a federal claim—a situation different from the state law claims at issue.

---

awarding punitive damages is substantive, rather than procedural, it would apply the source state's law. Id. at 805. It also applied West Virginia evidentiary rules. Id. at 813–14. But nowhere did the court discuss whether any procedural law was inconsistent with Congress's full purposes and objectives. Finally, the Allen Plaintiffs cite Bocook v. Ashland Oil, Inc., 819 F. Supp. 530 (S.D. W. Va. 1993). Bocook did not discuss which procedural law governed. Rather, it said in a footnote that the parties agreed, and the court concurred, that in cases involving interstate pollution, the point source state's substantive law applies. Id. at 532 n.1. Again, we all agree on that proposition. These West Virginia cases do not analyze the situation before us—what state's statute of limitations applies when the procedural law is inconsistent with Congress's full purposes and objectives.

Because we hold that a district court must apply the point source state's statute of limitations to state law claims preserved under the CWA, we remand to the district court for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.